**In re Leslie A. and Loralee K. NOBLE, Debtors.**

**In re Cecil Harless BAILEY III and Pamela Gayle Rike– Bailey, Debtors.**

**Bankruptcy Nos. 95–30501, 95–30936.**

United States Bankruptcy Court, W.D. Washington.

May 25, 1995.

## DECISION ON REAFFIRMATION AGREEMENTS

PHILIP H. BRANDT, Bankruptcy Judge.

Debtors Leslie and Loralee Noble and Pamela Rike–Bailey, unrepresented in their bankruptcy cases, have signed reaffirmation agreements with GreenTree Financial Corporation ("GreenTree") and General Motors Acceptance Corporation ("GMAC"), respectively. The agreements were filed and set for approval hearings, and the Debtors appeared.

Section 524(c) of the Bankruptcy Code[1] provides:

> An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, only if—

> . . . . .

> (2)(A) such agreement contains a clear and conspicuous statement which advises the debtor that the agreement may be rescinded at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim; and

> (B) such agreement contains a clear and conspicuous statement which advises the debtor that such agreement is not required under this title, under nonbankruptcy law, or under any agreement not in accordance with the provisions of this subsection;

> . . . . .

> (6)(A) in a case concerning an individual who was not represented by an attorney during the course of negotiating an agreement under this subsection, the court approves such agreement as—(i) not imposing an undue hardship on the debtor or a dependent of the debtor; and (ii) in the best interest of the debtor.

The Nobles proposed to make monthly payments of $408.38 to GreenTree on an obligation of $36,320.88 secured by their manufactured home, valued at $39,500.00 in their schedules. The last two paragraphs of the reaffirmation agreement before the signature lines read:

> THIS REAFFIRMATION AGREEMENT MAY BE RESCINDED AT ANY TIME PRIOR TO DISCHARGE OR WITHIN SIXTY (60) DAYS AFTER THE DATE THIS AGREEMENT IS FILED WITH THE COURT, WHICHEVER OCCURS LATER, BY GIVING WRITTEN NOTICE OF RESCISSION TO CREDITOR.

> This agreement represents a fully informed and voluntary agreement by the

---

**1.** 11 U.S.C.: Absent contrary indication, all section and chapter references are to the Bankruptcy Code.

Debtor(s) and does not impose an undue hardship on the Debtor(s) or a dependent of the Debtor. Debtor further acknowledges that this Agreement is not required under title 11, United States Code (the Bankruptcy Code), under non-bankruptcy law, or under any agreement not in accordance with the provisions of 11 U.S.C. § 524(c). An attorney has fully advised the Debtor(s) of the legal effect and consequences of signing a Reaffirmation Agreement and any default thereunder.

Ms. Rike–Bailey proposed to reaffirm an obligation of $10,383.89, secured by a 1989 Ford Van. She agreed to make monthly payments of $369.12 to GMAC. The van was not separately valued in the schedules (it is one of three vehicles listed for a total value of $12,092.92: the others are a 1985 Mercury Lynx and a 1979 Honda Goldwing), but GMAC's claim is shown as fully secured on Schedule D. Although theirs is a joint case, Mr. Bailey did not sign, nor did he appear at the hearing. The first paragraph of text in the Rike–Bailey/GMAC agreement reads:

> NOTICE: THE OBLIGATION ASSIGNED TO GENERAL MOTORS ACCEPTANCE CORPORATION DESCRIBED BELOW IS DISCHARGEABLE UNDER APPLICABLE BANKRUPTCY LAWS. YOU ARE NOT LEGALLY OBLIGATED TO REAFFIRM SUCH OBLIGATION; AND IF YOU REAFFIRM SUCH OBLIGATION, YOUR LIABILITY ON SUCH OBLIGATION WILL BE FULLY RESTORED AND ENFORCEABLE IN ACCORDANCE WITH ITS TERMS.

No other part of the text is set off in contrasting type, size, or color, and there is no statement to the effect that the agreement is not required.

The Ninth Circuit Bankruptcy Appellate Panel concisely articulated the pertinent law in a recent decision:

> Subject to certain exceptions enumerated in Section 523, Section 727 discharges a debtor from all debts that have arisen before the date of the order for relief. *In re Price,* 871 F.2d 97, 98 (9th Cir.1989). Section 524(a) permanently enjoins all creditor actions to collect debts discharged under Section 727. *In re Poule,* 91 B.R. 83, 87 (9th Cir. BAP 1988). However, a debtor may voluntarily repay a discharged debt. 11 U.S.C. § 524(f). *See In re Kroeger Properties and Development, Inc.,* 57 B.R. 821, 823 n. 3 (9th Cir. BAP 1986). The debtor also may enter into an agreement with a creditor to reaffirm an otherwise dischargeable debt. The agreement will be binding only if made in compliance with Section 524(c) and (d). *In re Bowling,* 116 B.R. 659, 663 (S.Ind.1990). *See In re Daily,* 47 F.3d 365, 367 (9th Cir.1995).
>
> . . . .
>
> The reaffirmation rules are intended to protect debtors from compromising their fresh start by making unwise agreements to repay dischargeable debts. *In re Martin,* 761 F.2d 1163, 1168 ( [6]th Cir.1985); *In re Fernandez–Lopez,* 37 B.R. 664, 667 n. 1 (9th Cir. BAP 1994); *Bowling, supra,* 116 B.R. at 664. Because of the danger that creditors may coerce debtors into undesirable reaffirmation agreements, they are not favored under the Bankruptcy Code and strict compliance with the specific terms in Section 524 is mandatory. *In re Artzt,* 145 B.R. 866, 868 (E.Tex.1992); *In re Petersen,* 110 B.R. 946, 949 (Colo. 1990); *In re Gardner,* 57 B.R. 609, 611 (Me.1986). A reaffirmation agreement which does not comply fully with Section 524 is void and unenforceable. *Artzt, supra,* 145 B.R. at 868.
>
> . . . .
>
> Whether a debtor was coerced or pressured by a creditor is immaterial, as no reaffirmation is enforceable unless it is made in compliance with Section 524(c) and (d). *Bowling, supra,* 116 B.R. at 664; *Gardner, supra,* 57 B.R. at 611.

*In re Getzoff,* 180 B.R. 572 (9th Cir. BAP 1995).

The statutory requirements for enforceability are:

> A reaffirmation agreement is enforceable only if: (1) the agreement was made in advance of the debtor's discharge; (2) the agreement contains a clear and conspicuous statement advising the debtor that the agreement may be rescinded at any time prior to discharge or within sixty

days after the agreement is filed with the court, whichever occurs later; (3) the agreement has been filed with the court; (4) the debtor has not rescinded the agreement; (5) the debtor has been warned by the bankruptcy judge as to the effects of the agreement; (6) the court finds that the agreement does not impose an undue hardship on the debtor; and (7) the court finds that the agreement is in the debtor's best interest. 11 U.S.C. § 524(c)(1)–(6); *In re Ellis,* 103 B.R. 977, 980–981 (Bankr. N.D.Ill.1989); *In re Hitt,* 137 B.R. 401, 403 (Bankr.D.Mont.1992). These statutory requirements exist to prevent debtors from being coerced into signing reaffirmation agreements and to enable them to be fully aware of the consequences of the agreement. *In re Smurzynski,* 72 B.R. 368, 371 (Bankr.N.D.Ill.1987).

*In re Johnson,* 148 B.R. 532, 539 (Bankr. N.D.Ill.1992).

In each of these cases, I concluded at the reaffirmation hearing that I could make the predicate findings that the agreements did not impose undue hardships on the Debtors, and were in their best interest, if the reaffirmations themselves meet the statutory requirements. However, as noted by the Appellate Panel in *Getzoff,* strict compliance with § 524 is a prerequisite to the enforceability of a reaffirmation agreement. No useful purpose would be served, and much mischief created, if I were to approve an unenforceable agreement.

▇▇▇ Respecting the two reaffirmations here at issue:

1. The Rike–Bailey/GMAC agreement utterly lacks any statement, much less a clear and conspicuous one, regarding rescission, as required by § 524(c)(2)(A), and is therefore unenforceable[2]; and

2. While the Noble/GreenTree agreement contains the "reaffirmation is not required" statement § 524(c)(2)(B) mandates, that statement is in the same type face, size, and format as the bulk of the agreement, in particular contrast to the preceding paragraph regarding rescission, which is entirely capitalized.

The question thus presented is whether the Noble/GreenTree agreement's "reaffirmation is not required" paragraph is clear and conspicuous. As GreenTree had no representative at the reaffirmation hearing, I requested it by letter to submit any authority it relied upon to show the agreement's compliance with § 524(c)(2)(B). GreenTree did not respond.

Before what is now paragraph (B) was added to § 524(c) by § 103 of the Bankruptcy Reform Act of 1994, Pub.L. 103–394, what is now paragraph (A) was the entire section, and there were cases addressing the "clear and conspicuous" notice of rescission requirement, generally involving agreements lacking any rescission language at all, e.g., *In re Minor,* 115 B.R. 690, 694 (D.Colo.1990); *In re Perryman,* 111 B.R. 227, 230 (Bankr.Ed. Ark.1990). Those cases do not address what "clear and conspicuous", undefined in the Bankruptcy Code, require.

▇▇▇ Construing a statute, courts: [M]ust begin with the plain meaning of its language. *Pennsylvania Public Welfare Dept. v. Davenport,* 495 U.S. 552, 557, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990). Where statutory language is unambiguous the judicial inquiry is complete. *Connecticut Nat. Bank v. Germain,* 503 U.S. 249, 252–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992).... When the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language. *United States v. Ron Pair Enterp., Inc.,* 489 U.S. 235, 240–41, 109 S.Ct. 1026, 1029–30, 103 L.Ed.2d 290 (1988).

*In re Bonner Mall Partnership,* 2 F.3d 899, 908 (9th Cir.1993), motion to vacate denied and dismissed as moot *sub nom. U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,* —— U.S. ——, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994).

Lexicographers define "conspicuous" as:
1. obvious to the eye or mind; plainly visible; MANIFEST ...

---

**2.** Reaching this conclusion, I need not consider the efficacy of one spouse's reaffirmation in a community property jurisdiction. *Household Fi-nance Co. v. Corby,* 61 Wash.2d 184, 377 P.2d 441 (1963); *Gannon v. Robinson,* 59 Wash.2d 906, 371 P.2d 274 (1962).

2. attracting or attending to attract attention by reason of size, brilliance, contrast, station; STRIKING, EMINENT ... *Webster's Third New International Dictionary of the English Language,* unabridged (1969).

and

1. easily seen or noticed; readily visible or observable ...
2. attracting special attention, as by outstanding qualities or eccentricities ... *Random House Dictionary of the English Language,* 2nd Ed., unabridged (1987).

*Random House* lists as synonyms:

1. manifest, noticeable, clear, marked, salient[.]
2. prominent, striking, noteworthy.

■ The plain language of § 524(c) requires a "conspicuous" statement to be made prominent in some fashion. Printing in the same type face, format, size, and color as the remainder of a document, as is the paragraph in question in the Noble/GMAC reaffirmation agreement, would not qualify. This conclusion is consistent with the two pre-Reform Act bankruptcy court decisions determining whether particular reaffirmation agreements met the "clear and conspicuous" requirement. Judge Small evidently so read the statute in *In re Wallace,* 102 B.R. 54, 56–57 (Bankr.E.D.N.C.1989). While he did not elaborate, he held that the rescission statement there at issue, made in the same print and type as the rest of the agreement set out in the appendix to the opinion, was not conspicuous.

Another approach is found in *Matter of Roberts,* 154 B.R. 967, 969–970 (Bankr. D.Neb.1993), which treats the statutory terminology as a matter of federal common law, and looks to the Uniform Commercial Code:

The question before the court is whether the above quoted language describing the right to rescind is clear and conspicuous under § 524(c)(2). The word "conspicuous" is not defined in the Bankruptcy Code. Lacking a statutory definition, the court must define the meaning of the terms "clear and conspicuous" as a matter of federal common law. An appropriate source of law for defining the meaning of "conspicuous" may be found in state law.

The word conspicuous is defined in the Nebraska Uniform Commercial Code as: ["]A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as, NONNEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color. But in a telegram any stated term is "conspicuous". Whether a term or clause is "conspicuous" or not is for decision by the court.["]

The U.C.C. definition of conspicuous is a particularly appropriate source of federal common law in commercial transactions and in consumer transactions under the Bankruptcy Code. Using the U.C.C. definition will lead to general uniformity of law whether or not a bankruptcy case is pending, and reference to U.C.C. § 1–201(10) will encourage uniformity of law throughout the United States. I see no federal interest to be served by developing a federal definition of "conspicuous". *Cf. U.S. v. Kimbell Foods,* 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979).

The Uniform Commercial Code section quoted in *Roberts* is identical to the Washington version, § 62A.1—201(10) of the Revised Code of Washington, and, evidently, to those of most states. 1 *Uniform Commercial Code (ULA)* § 1–201, Variations from Official Text, at pp. 77–80.

Considered in light of the statute's plain meaning, the Noble/GreenTree agreement the lower case "reaffirmation is not required" paragraph, while as clear as the statutory language, is not conspicuous, and does not satisfy § 524(c)(2)(B). This analysis is reinforced by federal common law, thoughtfully articulated by Judge Minihan in *Roberts.* As noted above, the Rike–Bailey/GMAC agreement lacks the necessary "rescission" notice.

The reaffirmation agreements are unenforceable and must therefore be disapproved. I will so order.